UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Allie Villaume,

        Plaintiff,

v.

iTradeNetwork, Inc.,

        Defendant.

File No. 24-cv-2005 (ECT/DLM)

**OPINION AND ORDER**

---

Alf E. Sivertson and Anja Michelle Sivertson, Law Office of Sivertson and Barrette, P.A., St. Paul, MN, for Plaintiff Allie Villaume.

Benjamin D. Sandahl and Develyn J. Mistriotti, Littler Mendelson, P.C., Minneapolis, MN, for Defendant iTradeNetwork, Inc.

---

Plaintiff Allie Villaume claims her former employer, Defendant iTradeNetwork, Inc., violated the Minnesota Human Rights Act ("MHRA") and the Family and Medical Leave Act ("FMLA") when it took a series of adverse actions against her, including terminating her employment. iTrade has moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted because the operative Amended Complaint does not plausibly allege a causal connection between any adverse action and any protected status Ms. Villaume held.[1]

---

[1] The issue of subject-matter jurisdiction deserves clarification. Plainly, Ms. Villaume's assertion of the FMLA claim means the case is one "arising under the . . . laws . . . of the United States," triggering subject-matter jurisdiction under 28 U.S.C. § 1331. In the operative Amended Complaint, Ms. Villaume alleges there is "concurrent jurisdiction under 15 U.S.C. § 3612" over her MHRA claims. Am. Compl. [ECF No. 5]

I[2]

Ms. Villaume began working for iTrade in April 2021 as a "senior account executive." Am. Compl. [ECF No. 5] ¶ 6. According to the operative Amended Complaint, iTrade provides supply-chain-management services for the food and beverage industries. *Id.* ¶ 2.

Ms. Villaume suffers from "severe anxiety with panic attacks, depression, and attention deficit disorder." *Id.* ¶ 8. iTrade knew of Ms. Villaume's health conditions from her first day on the job. *Id.* Ms. Villaume "disclosed that she had a disability in iTrade's onboarding paperwork when she was hired, and each of her managers and many co-workers became aware of her disabilities after she started working for iTrade." *Id.*[3]

---

¶ 4. But the cited statute—15 U.S.C. § 3612—addresses jurisdiction, venue, and removal of cases brought under the Condominium and Cooperative Abuse Relief Act, 15 U.S.C. § 3601, *et seq.* That statute doesn't apply to this case. Regardless, the Amended Complaint alleges that Ms. Villaume and iTrade are citizens of different states, *see* Am. Compl. ¶¶ 1–2 (alleging that Ms. Villaume is a Minnesota citizen and that iTrade is a citizen of Delaware and California), and that the amount in controversy exceeds $75,000, exclusive of interest and costs, *see id.* at 8 (following the "WHEREFORE" clause and seeking "general and special damages in an amount more than $75,000"). These allegations trigger diversity jurisdiction under 28 U.S.C. § 1332(a); it doesn't matter that the Amended Complaint omits citation to § 1332(a). The point is that there is subject-matter jurisdiction to adjudicate iTrade's motion as to Ms. Villaume's federal and state claims, never mind the possibility of supplemental jurisdiction under 28 U.S.C. § 1367(a).

[2]    In accordance with the standards governing a Rule 12(b)(6) motion, the facts are drawn from the operative Amended Complaint. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

[3]    The Amended Complaint's references to Ms. Villaume's "disability" or "disabilities" are best understood as shorthand for her health conditions—*i.e.*, "severe anxiety with panic attacks, depression, and attention deficit disorder." *See* Am. Compl. ¶ 8. If the Amended Complaint's references to "disability" or "disabilities" are intended

In her senior account executive position, Ms. Villaume managed a territory with "several hundred" iTrade customers. *Id.* ¶ 6. She managed iTrade's existing customers and worked to acquire new customers. *Id.* Ms. Villaume was successful in this position. "By the end of 2021, [she] was number one in sales at iTrade nationwide and became a member of iTrade's President's Club which recognizes those sales representatives whose sales exceed quotas." *Id.*

In May 2022, iTrade promoted Ms. Villaume to a "strategic account executive" position. *Id.* ¶ 7. The Amended Complaint does not say whether or how Ms. Villaume's duties changed following the promotion. *See id.* Regardless, by year-end 2022, "she again became number one in sales at iTrade nationwide and again qualified for iTrade's President's Club." *Id.*

From January 9 through 11, 2023, Ms. Villaume attended an iTrade sales meeting in San Francisco. *Id.* ¶ 9. During a dinner on the meeting's last night, Ms. Villaume suffered an anxiety attack. *Id.* She left the dinner, went outside, and telephoned a cousin who talked Ms. Villaume through the attack and calmed her down. *Id.* Ms. Villaume's manager and "a couple of her co-workers" left the dinner to check on Ms. Villaume. *Id.* The Amended Complaint does not describe what, if any, interactions the co-workers had with Ms. Villaume. *See id.* Ms. Villaume "composed herself" and returned to the dinner. *Id.*

---

to allege or imply the legal conclusion that Ms. Villaume was "disabled" for purposes of Minnesota or federal law, the allegations will not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

On January 26, 2023, an iTrade human-resources consultant notified Ms. Villaume that an internal complaint had been filed concerning Ms. Villaume's behavior at the sales meeting, and that the complaint would be investigated. *Id.* ¶ 10. "The complaint alleged that [Ms.] Villaume was angry and approached one of iTrade's vice presidents at the meeting and said, 'Fuck you. You didn't make me MVP.'" *Id.* The complaint also alleged that Ms. Villaume was intoxicated throughout the sales meeting. *Id.* ¶ 11. Ms. Villaume denied the allegations. *Id.* ¶¶ 10–11.

The investigation concluded by early February and resulted in a finding that Ms. Villaume had behaved unprofessionally at the meeting. *Id.* ¶ 12. Ms. Villaume received a "Final Written Warning." *Id.* Ms. Villaume was asked to sign the warning but refused. *Id.* In her view, the complaint, investigation, and resulting warning were discriminatory, retaliatory, and unprofessional. *Id.* ¶¶ 12–13.

In mid-February, iTrade notified Ms. Villaume that it was putting her on a performance-improvement plan (or "PIP"). *Id.* ¶ 14. iTrade asked Ms. Villaume to respond to the plan by February 17, the day before Ms. Villaume was scheduled to leave on a week-long vacation. *Id.* On February 16, Ms. Villaume emailed iTrade's human resources vice president. *Id.* ¶ 15. In her email, Ms. Villaume wrote "that the claims in the PIP were not accurate and that she wanted . . . to file a complaint that she was being discriminated against and retaliated against based on her disability." *Id.*

Ms. Villaume's discrimination and retaliation complaints were referred to iTrade's legal department for investigation. *Id.* As part of this investigation, Ms. Villaume was

interviewed by an iTrade in-house attorney. *Id.* ¶ 16. The interview occurred before Ms. Villaume left on vacation. *Id.*

Ms. Villaume was on vacation from February 18 through February 25, 2023. *See id.* ¶¶ 14, 17. Ms. Villaume took FMLA leave beginning February 27, after she returned from vacation. *Id.* ¶ 17. "Her work situation at iTrade was causing severe anxiety with panic attacks and dangerously high blood pressure that required a medical leave of absence." *Id.* Ms. Villaume's FMLA leave ended April 4, 2023. *Id.*

On April 5, after Ms. Villaume returned from her leave, iTrade's legal department informed Ms. Villaume that its investigation of her discrimination and retaliation complaints found no "violation of law or iTrade's policies." *Id.* ¶ 18. The next day, April 6, Ms. Villaume informed iTrade she would not sign the performance-improvement plan because the allegations supporting it were false. *Id.* ¶ 19.

A little more than one month later, on May 16, "iTrade management informed the commercial sales team that the sales team would be restructured, and that each sales team member would have to reapply for a position and take an assessment." *Id.* ¶ 20. Ms. Villaume reapplied for a position that was essentially the same as her strategic account executive position. *Id.* ¶¶ 20–21. Ms. Villaume passed the assessment, but she was not selected for the position. *Id.* ¶ 21. iTrade terminated her employment on June 7, 2023. *Id.* ¶ 21.

Ms. Villaume brought this case in May 2024. *See* ECF No. 1 (identifying filing date). She asserts three claims: (1) Ms. Villaume alleges iTrade discriminated against her based on her disability in violation of the MHRA, Minn. Stat. § 363A.08, subdiv. 2, when

it "falsely accused her of wrongdoing at the [sales] meeting, gave her a 'Final Written Warning' based on unfounded allegations, put her on a PIP, and then ultimately failed to hire [her] for the restructured position despite her qualifications for the position."  Am. Compl. ¶¶ 22–29.  (2) Ms. Villaume alleges these same adverse actions occurred because she reported disability discrimination and thus amounted to reprisals prohibited by the MHRA, Minn. Stat. § 363A.15.  Am. Compl. ¶¶ 30–32.  (3) Ms. Villaume alleges a discrimination claim under the FMLA, 29 U.S.C. § 2615(a), claiming iTrade refused to hire her for the restructured position because she exercised FMLA rights.  Am. Compl. ¶¶ 33–36.  For relief, Ms. Villaume seeks damages greater than $75,000, including punitive damages, "costs of suit," and "such other and further relief as the Court deems just and equitable."  *Id.* at 8–9 (following "WHEREFORE" clause).

## II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor.  *Gorog*, 760 F.3d at 792.  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

At the pleading stage, a plaintiff raising a discrimination or retaliation claim "need not plead facts establishing a prima facie case." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021); *see also Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1016 (8th Cir. 2013). "However, the 'elements of the prima facie case are [not] irrelevant to a plausibility determination in a discrimination suit.'" *Warmington*, 998 F.3d at 796 (quoting *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). Rather, the allegations in the complaint must "'give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*,' which in turn 'reduces the facts needed to be *pleaded* under *Iqbal*.'" *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). In other words, the elements of the prima facie case are "part of the background against which a plausibility determination should be made." *Blomker*, 831 F.3d at 1056 (citation omitted).

## A

Consider Ms. Villaume's claims in the order they are asserted in the Amended Complaint, beginning with the claim that iTrade discriminated against her because of her disability in violation of the MHRA. *See* Minn. Stat. § 363A.08, subdiv. 2; Am. Compl. ¶¶ 22–29. To prevail on this claim, Ms. Villaume would eventually have to prove that (1) she had a "disability" as the MHRA defines that term; (2) she was "qualified to perform the essential functions of h[er] job, with or without reasonable accommodation"; and (3) she "suffered an adverse employment action because of h[er] disability." *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1183 (8th Cir. 2019). iTrade argues Ms.

Villaume has failed to plausibly allege that she had a disability or that her employment ended because of her disability.[4]

1

The MHRA defines a "disability" as a "condition or characteristic that renders a person a disabled person." Minn. Stat. § 363A.03, subdiv. 12. A "disabled person," in turn, is one who "(1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Id.*[5] "Major life activities are 'activities that

---

[4]     iTrade does not dispute that its decision to end Ms. Villaume's employment caused her to suffer an adverse employment action. Regardless, iTrade argues that its post-sales-meeting investigation of Ms. Villaume, the warning it issued to her following that investigation, and its imposition of a performance-improvement plan for Ms. Villaume are not adverse employment actions as a matter of law. *See* Def.'s Mem. in Supp. [ECF No. 9] at 13. This argument, and the authorities iTrade cites to support it, are questionable considering *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), a case not addressed in the parties' briefs. There, the Supreme Court rejected an Eighth Circuit rule requiring Title VII plaintiffs to show a "materially significant" change in employment. *Muldrow*, 601 U.S. at 356. In the Supreme Court's view, the "materially significant" requirement was not supported by the statute's text. *Id.* at 355. Instead, the Supreme Court held, a plaintiff need only show a "disadvantageous" change in terms and conditions of employment. *Id.* at 354. *Muldrow* was a Title VII case, but its logic applies to other anti-discrimination statutes with similar frameworks. Before *Muldrow*, the Eighth Circuit used the "materially significant" standard for a range of discrimination claims, including MHRA claims. *See Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005). In the relatively brief post-*Muldrow* period, district courts in the Eighth Circuit have applied *Muldrow* to MHRA disability-discrimination claims. *See, e.g.*, *Farmer v. FilmTec Corp.*, No. 22-cv-2974 (KMM/DLM), 2024 WL 4239552, at *12 (D. Minn. Sept. 19, 2024).

[5]     Section 363A.03, subdivision 12 was amended effective May 15, 2024, to include a fourth category defining a "disabled person" as one who "has an impairment that is episodic or in remission and would materially limit a major life activity when active." *See* 2024 Minn. Laws 105 (H.F. No. 4109). Because this amendment was not in effect when iTrade took its suit-prompting actions in 2023, the amendment does not apply here.

are of central importance to daily life.'" *Johanning v. Summit Orthopedics, Ltd.*, No. A21-0313, 2021 WL 5872664, at *4 (Minn. Ct. App. Dec. 13, 2021) (quoting *Gee v. Minn. State Colls. & Univs.*, 700 N.W.2d 548, 553 (Minn. Ct. App. 2005)). "These activities include, but are not limited to, 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id.* (quoting *Gee*, 700 N.W.2d at 553); *see Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 (8th Cir. 2007) ("Major life activities include caring for one's self, performing manual tasks, walking, seeing, hearing, breathing, learning, and working."). "A major life activity is 'materially limited' when it is 'greatly impeded.'" *Johanning*, 2021 WL 5872664, at *4 (quoting *Sigurdson*, 532 N.W.2d 225, 228–29 (Minn. 1995)). "The degree to which a condition limits one or more major life activities is evaluated based on the plaintiff's specific circumstances." *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 543 (Minn. 2001).

Ms. Villaume has not plausibly alleged she had an impairment that materially limited her life activities at the time iTrade took any adverse employment actions against

---

*See Fiecke v. Ascension Place*, No. C7-96-1791, 1997 WL 147441, at *2 (Minn. Ct. App. Apr. 1, 1997), *rev. denied* (Minn. May 28, 1997); *see also Wells v. BNSF Ry. Co.*, No. 17-cv-807 (JNE/FLN), 2017 WL 5513626, at *3 n.3 (D. Minn. Nov. 16, 2017) (finding that amendments expanding the ADA's disability definition passed after the alleged discrimination occurred were inapplicable to the plaintiff's claims). It is true that "a clarifying act is to be read into statutory law retrospectively." *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn. 1987). An act is "clarifying" when the legislature "manifest[s] its unmistakable intention that the [amendment] was not intended to change the intent of the statute but only to correct the interpretation." *Id.*; *see Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 706 (Minn. 1992) (holding that statutory amendment applied retroactively). Here, the inclusion of the fourth "disability" category was not a clarifying act. No text suggests it was clarifying; it added a new, previously nonexistent category to the definition of "disabled person."

her. The adverse actions identified in the Amended Complaint are that iTrade "[1] falsely accused [Ms. Villaume] of wrongdoing at the [sales] meeting, [2] gave her a 'Final Written Warning' based on unfounded allegations, [3] put her on a PIP, and then [4] ultimately failed to hire [her] for the restructured position despite her qualifications for the position." Am. Compl. ¶ 27. The first three of these actions occurred between January 26 and February 15, 2023. *See id.* ¶¶ 10–14. The Amended Complaint alleges no facts hinting that Ms. Villaume's health conditions—anxiety, depression, and attention-deficit disorder—materially limited her major life activities during this time. As the Amended Complaint describes it, Ms. Villaume was performing her job at the highest level "despite" these conditions. *Id.* ¶¶ 6–8. The anxiety attack Ms. Villaume suffered at the January 2023 sales meeting dinner does not show impairment of major life activities. As the Amended Complaint describes it, the episode was brief, and Ms. Villaume was able to compose herself in time to return to the dinner. *Id.* ¶ 9. iTrade's decision not to hire Ms. Villaume occurred in June 2023, some three months after Ms. Villaume's FMLA leave ended and she "was able to return to work." *See id.* ¶¶ 17, 21.

Regardless, the better answer is that Ms. Villaume has plausibly alleged she had a "record of" an impairment that materially limited one or more major life activities. "To have a record of an impairment" under the MHRA, "an employee must have a history of" a qualifying impairment. *Heisler v. Metro. Council*, 339 F.3d 622, 630 (8th Cir. 2003) (cleaned up); *see Leitner v. Gartner Studios, Inc.*, No. A07-63, 2008 WL 314177, at *4 (Minn. Ct. App. Feb. 5, 2008). In contrast to the other two prongs of the "disability" definition, the employee may have a record of an impairment even if she is not currently

experiencing the effects of the impairment.  *See Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 281 (1987) (addressing the phrase "record of" as used in the ADA).  The Amended Complaint alleges that Ms. Villaume has suffered from "severe anxiety with panic attacks" since before working for iTrade.  *See* Am. Compl. ¶ 8.  The Amended Complaint alleges these conditions flared in late February 2023, resulting in "dangerously high blood pressure" and requiring Ms. Villaume to take a five-week medical leave.  *Id.* ¶ 17.  In other words, Ms. Villaume's impairments prevented her from working (a major life activity) for an extended period.

iTrade argues that merely taking time off work to receive medical treatment does not show an employee is disabled.  As a general legal rule, this is correct: "Simply having a medical condition and taking time off work to receive treatment for the condition does not establish a record of disability."  *Rohland v. St. Cloud Christian Sch.*, No. A04-821, 2004 WL 2940889, at *8 (Minn. Ct. App. Dec. 21, 2004); *see Liljedahl v. Ryder Student Transp. Servs., Inc.*, 341 F.3d 836, 841 (8th Cir. 2003) (finding that "cancer does not qualify as a disability under the MHRA" when the surgery to treat it was successful and the recuperation period was limited); *see also Yakubek v. Westbrooke Patio Homes Ass'n, Inc.*, No. C7-97-506, 1997 WL 613667, at *3 (Minn. Ct. App. Oct. 7, 1997) (finding that anxiety and depression do not qualify as disabilities under the MHRA when they result in a temporary, one-week inability to perform one's job).  Construed in Ms. Villaume's favor, the Amended Complaint alleges facts beyond this general rule.  It alleges that Ms. Villaume suffered from severe anxiety and panic attacks for some time—a reasonable inference is that they were chronic conditions—and it alleges the impairments' February

2023 flare-up prevented her from working and necessitated a relatively lengthy leave of absence. For contrast's sake, we're not talking about a plaintiff who was forced to stop working and take leave because she contracted a condition that is ordinarily temporary and easily treated (say, appendicitis). In this context, "the plaintiff's specific circumstances" matter, *Hoover*, 632 N.W.2d at 543, and Ms. Villaume has plausibly alleged she has a record of an impairment that materially limited her ability to work.[6]

Ms. Villaume has not plausibly alleged that iTrade "regarded" her as having an impairment that materially limited a major life activity. To make this showing, Ms. Villaume was required to allege facts plausibly showing that iTrade "believed [she] could not perform a broad range of jobs," "regard[ed] the impairment to be permanent or long term," and "perceived [her disability] as limiting even though [Ms. Villaume] was capable of performing work." *McLain v. Andersen Corp.*, 567 F.3d 956, 968 (8th Cir. 2009) (citations omitted). The Amended Complaint alleges Ms. Villaume disclosed her conditions "in iTrade's onboarding paperwork when she was hired, and each of her managers . . . became aware of her disabilities after she started working for iTrade." Am. Compl. ¶ 8. It is at least plausible that iTrade knew why Ms. Villaume exercised her

---

[6]    The Amended Complaint alleges specifically that Ms. Villaume's "work situation at iTrade" caused her to experience severe anxiety and panic attacks, in turn necessitating her FMLA leave. Am. Compl. ¶ 17. The Amended Complaint does not allege facts regarding Ms. Villaume's inability to work in other jobs or for other employers. *See generally id.* Cases hold that "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Ceretti v. Runyon*, No. 97-3109, 1998 WL 403199, at *3 (8th Cir. July 6, 1998) (quoting *Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995)); *see also Daley v. Koch,* 892 F.2d 212, 215 (2d Cir. 1989) (finding that the major life activity "working" cannot be interpreted to mean working at the specific job of one's choice). iTrade does not rely on these authorities to support its motion, so they will not be considered.

FMLA-leave option beginning in February 2023. *See id.* ¶ 17. Considered together, these allegations plausibly show that iTrade understood or believed Ms. Villaume's impairment was long-term. But the Amended Complaint alleges no facts suggesting iTrade believed Ms. Villaume was not capable of performing a broad range of jobs. *See generally id.*

2

Ms. Villaume must also plausibly allege that iTrade took adverse employment actions against her "because of" her disability. Minn. Stat. § 363A.08, subdiv. 2. To do so, she must identify facts plausibly showing that her disability "actually played a role" in the decision to take adverse actions against her. *Lewis v. CNA Nat'l Warranty Corp.*, 63 F. Supp. 3d 959, 961–62 (D. Minn. 2014) (quoting *Goins v. West Grp.*, 635 N.W.2d 717, 722 (Minn. 2001)); *see Norton v. ISD 197*, No. 20-cv-1530 (DWF/TNL), 2021 WL 2002314, at *4 (D. Minn. May 19, 2021). There must have been a "specific link between the discrimination and the adverse action." *Chalfant v. Titan Distrib., Inc.*, 475 F.3d 982, 990–91 (8th Cir. 2007) (addressing an ADA claim); *see also Brunckhorst*, 914 F.3d at 1183 (applying the same causation standard to claims under the ADA and MHRA).

Ms. Villaume argues that "actions taken against [her] by iTrade . . . permit the Court to draw the reasonable inference that [Ms.] Villaume's termination was based on an illegitimate reason." Pl.'s Mem. in Opp'n [ECF No. 14] at 7. Though there is room for misunderstanding, Ms. Villaume's position seems to be that the post-sales-meeting investigation, the imposition of a performance-improvement plan, and the qualifications of the individuals iTrade hired instead of her add up to show a link between disability

discrimination and her termination. *See id.* at 7–8. This approach to causation is not plausible on the Amended Complaint's factual allegations.

The investigation and performance-improvement plan do not plausibly show causation, whether they are considered separately or together. The Amended Complaint all but concedes the absence of a connection between Ms. Villaume's disability and the post-sales-meeting investigation. The Amended Complaint alleges only that "a complaint had been lodged against" Villaume based on allegations regarding her behavior at the meeting, that the complaint would be investigated, and that the investigation resulted in a finding that Ms. Villaume had engaged in unprofessional conduct. Am. Compl. ¶¶ 10–12. The allegations regarding Ms. Villaume's behavior concerned her use of profanity; the Amended Complaint does not allege that the complaint-supporting allegations concerned Ms. Villaume's disability or behavior flowing from it. *See id.* The Amended Complaint does not allege that anything about the investigation reflected discriminatory animus. *See id.* The most that can be said is the investigator did not believe Ms. Villaume's denials, but that alone does not show discrimination. The same is true of the performance-improvement plan. No allegations connect the plan's imposition to discriminatory animus. Because the Amended Complaint connects neither the investigation nor the performance-improvement plan to discriminatory animus, it is difficult to understand how these two events might together show that Ms. Villaume's termination resulted from disability discrimination.

No doubt Ms. Villaume may show causation by plausibly alleging that iTrade hired less-qualified, non-disabled individuals instead of her. *See, e.g.*, *Equal Emp.*

*Opportunity Comm'n v. Modern Grp., Ltd.*, 725 F. Supp. 3d 577, 631 (E.D. Tex. 2024);

*Parker v. Children's Nat'l Med. Ctr., Inc.*, Civil No. ELH-20-3523, 2021 WL 5840949,

at *15 (D. Md. Dec. 9, 2021).  But the Amended Complaint does not plausibly allege that

the two individuals iTrade hired instead of Ms. Villaume were unqualified in some

respect or that either of them lacked qualifications Ms. Villaume possesses.  Though Ms.

Villaume asserts in her brief that she was "replaced by two individuals who did not have

the requisite qualifications," Pl.'s Mem. in Opp'n at 7, these allegations are not in the

Amended Complaint.[7]  It alleges only that the two selected individuals "had each been

with the company for roughly a year, and one of the individuals was the cousin of the

vice president running the entire sales organization for iTrade."  Am. Compl. ¶ 21.  The

Amended Complaint alleges that Ms. Villaume "has over 15 years of supply chain

experience."  *Id.* ¶ 20.  It does not allege how many total years of industry experience or

what other career experience either individual iTrade hired may have possessed.  *See id.*

¶ 21.  The Amended Complaint alleges that both individuals had "been with the company

for roughly a year."  *Id.*  It does not allege why that made each person unqualified or less

qualified in comparison with Ms. Villaume; by that point, she had been employed with

iTrade for only two years.  *See id.* ¶ 6.  And without more, the fact that nepotism

---

[7]    A plaintiff cannot defend a complaint by relying on a brief or affidavit that describes additional or different allegations that are not in the complaint.  *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation omitted); *see also In re Agape Litig.*, 773 F. Supp. 2d 298, 316 (E.D.N.Y. 2011) ("It is well-settled that a plaintiff cannot amend the complaint through briefs and affidavits, and such facts are thus irrelevant for purposes of determining whether the Plaintiff's complaint should be dismissed for failure to state a claim." (cleaned up)).

plausibly played a role in the hiring of one individual does not show that disability discrimination played a role in the decision not to hire Ms. Villaume. Ms. Villaume's failure to allege facts plausibly showing that her iTrade employment ended "because of" her disability means her MHRA disability-discrimination claim must be dismissed.

B

Ms. Villaume claims that, after she "engaged in protected activity by reporting acts of discrimination, iTrade engaged in acts of reprisal against [her] that included, but were not limited to, its failure to hire [her] for the restructured position despite her qualifications for the position." Am. Compl. ¶ 31. Notwithstanding the broad "not limited to" language used to describe this claim, Ms. Villaume makes clear in her brief that challenged reprisals are "the PIP and the termination." Pl.'s Mem in Opp'n at 9.

Ms. Villaume claims iTrade's imposition of the performance-improvement plan and its decision to end her employment violated the MHRA's anti-reprisal provision, Minn. Stat. § 363A.15. The statute makes it unlawful for an employer "to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Id.* "A reprisal includes, but is not limited to, any form of intimidation, retaliation, or harassment." *Id.* An employer's "refus[al] to hire" may be a reprisal. *Id.* An MHRA reprisal claim has three elements: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the

two." *Bahr v. Capella Univ.*, 788 N.W.2d 76, 81 (Minn. 2010) (quoting *Hoover*, 632 N.W.2d at 548).

Ms. Villaume alleges she engaged in protected conduct on four dates: February 7, 9, 16, and 17, 2023. *See* Am. Compl. ¶¶ 12–13, 15–16; Pl.'s Mem. in Opp'n at 9. The Amended Complaint does not plausibly allege protected activity on the first two of these dates. On February 7, the Amended Complaint alleges Ms. Villaume told her manager and an iTrade human-resources representative "that she was being treated differently than the others on the team and wanted to file a complaint and open an investigation into the different treatment." Am. Compl. ¶ 12. On February 9, the Amended Complaint alleges Ms. Villaume told another iTrade human-resources representative "that the investigation leading up to the final warning was unprofessional, it was hostile and accusatory, it raised new allegations that hadn't been mentioned . . . earlier, and that the warning felt like it was retaliation." *Id.* ¶ 13. As alleged, Ms. Villaume's complaints on these dates do not mention her health conditions or disability discrimination. *See id.* ¶¶ 12–13. They give no indication what Ms. Villaume thought was "different" about the treatment she was receiving, *see id.* ¶ 12, or what she might have done to prompt "retaliation," *see id.* ¶ 13. Without more, the reader is left to guess as to whether Ms. Villaume's complaints on February 7 and 9 opposed an MHRA-forbidden practice or fit section 363A.15's protected-activities list in some other way.

The Amended Complaint plausibly alleges that Ms. Villaume engaged in protected activity on February 16, 2023, by expressing the desire to "file a complaint that she was being discriminated against and retaliated against based on her disability." Am. Compl.

¶ 15; Minn. Stat. § 363A.15 (identifying protected activity to include "oppos[ing] a practice forbidden under this chapter"). And the Amended Complaint plausibly alleges that Ms. Villaume engaged in protected activity on February 17 by being interviewed and participating in the investigation of her complaint. Am. Compl. ¶ 16; Minn. Stat. § 363A.15 (identifying protected activity to include "assist[ing], or participat[ing] in any manner in an investigation").

Regardless, the Amended Complaint does not plausibly allege that these protected activities caused iTrade to implement the performance-improvement plan or end Ms. Villaume's employment. iTrade implemented the performance-improvement plan at the latest on February 15—before Ms. Villaume engaged in the plausibly alleged protected activities on February 16 and 17. *See* Am. Compl. ¶ 14. The Amended Complaint includes no allegations of direct evidence that might connect a retaliatory motive to iTrade's decision to end Ms. Villaume's employment. *See generally id.* It does not allege, for example, that a supervisor or other iTrade employee who might have been responsible for the decision said something suggesting a retaliatory motive. The Amended Complaint's allegations regarding the hired individuals' qualifications do not plausibly show reprisal for the same reasons (discussed above) they do not plausibly show disability discrimination. "Unless 'very close' in time, mere temporal proximity is not sufficient to create a genuine issue of fact regarding causation." *Schaefer v. Cargill Kitchen Sols., Inc.*, No. A16-0154, 2016 WL 6570240, at *9 (Minn. Ct. App. Nov. 7, 2016) (citing *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001)). In *Schaefer*, the court favorably cited a case holding that a two-week period between

protected activity and an adverse employment action was "barely" sufficient, *id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)), and that periods of three weeks and twenty months were not, *id.* (citing *Clark Cnty. Sch. Dist*, 532 U.S. at 273–74, and *Freeman v. Ace Tel. Ass'n*, 467 F.3d 695, 697 (8th Cir. 2006)).  Here, the gap between Ms. Villaume's protected activities in mid-February and the end of her iTrade employment on June 7 is just under four months.  Under *Schaefer* and its cited authorities, that temporal relationship is too long to plausibly show causation.

C

Ms. Villaume claims iTrade violated the FMLA, 29 U.S.C. § 2615(a), by taking adverse employment actions against her because she exercised FMLA rights.  Am. Compl. ¶¶ 33–36.  Section 2615(a) reads:

> **(a) Interference with rights**
>
> > **(1) Exercise of rights**
> >
> > It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
> >
> > **(2) Discrimination**
> >
> > It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a).  Our Eighth Circuit Court of Appeals "has recognized three types of claims arising under these two subsections.  The first type, arising under § 2615(a)(1), occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid responsibilities under the Act."  *Pulczinski v. Trinity Structural Towers,*

19

*Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012). "An employee proceeding on this theory need not show that an employer acted with discriminatory intent." *Id.* Though in several older cases the Eighth Circuit has described this claim as one for "interference" with FMLA rights, *e.g.*, *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006), it later declared that "what we formerly described as 'interference' claims henceforth shall be called 'entitlement' claims." *Bosley v. Cargill Meat Sols. Corp.*, 705 F.3d 777, 780 (8th Cir. 2013) (citing *Pulczinski*, 691 F.3d at 1005). The second type of claim is one for "retaliation." *Pulczinski*, 691 F.3d at 1006. A retaliation claim arises under § 2615(a)(2) and occurs when "an employee opposes any practice made unlawful under the FMLA." *Id.* The third type of claim

> arises when an employer takes adverse action against an
> employee because the employee exercises rights to which he
> is entitled under the FMLA. In this scenario, the employer
> does not prevent the employee from receiving FMLA
> benefits. Rather, it is alleged that after the employee
> exercised his statutory rights, the employer discriminated
> against him in the terms and conditions of employment. An
> employee making this type of claim must prove that the
> employer was motivated by the employee's exercise of rights
> under the FMLA. The textual basis for such a claim is not
> well developed in [the Eighth Circuit's] cases, but the claim
> likely arises under the rule of § 2615(a)(1) that an employer
> may not "interfere with, restrain, or deny the exercise of or
> the attempt to exercise" rights defined by the FMLA. To
> distinguish the "entitlement" claim under § 2615(a)(1), and
> the "retaliation" claim under § 2615(a)(2), we think it helpful
> to describe this sort of complaint as a "discrimination" claim.

*Pulczinski*, 691 F.3d at 1006 (citations omitted); *see also Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1157 n.5 (8th Cir. 2016) (noting "an unresolved

difference of opinion" in the Eighth Circuit as to whether a discrimination claim arises under § 2615(a)(1) or (a)(2)).

Ms. Villaume raises a discrimination claim. A prima facie FMLA discrimination claim has three elements: "(1) that [the plaintiff] engaged in activity protected under the Act, (2) that he suffered a materially adverse employment action, and (3) that a causal connection existed between the employee's action and the adverse employment action." *Pulczinski*, 691 F.3d at 1007. With respect to causation, the factual allegations must make it plausible that engaging in protected activity "'played a part' in the employer's decision." *Id.* (quoting *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 963 n.3 (8th Cir. 2012)). "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required . . . ." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc). Temporal proximity alone may suffice only if it is "very close." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) (quotation omitted). In determining the temporal relationship between the two events, the Eighth Circuit "looks to the date an employer knew of an employee's use (or planned use) of FMLA leave, not the date it ended." *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012) (citation omitted). The Eighth Circuit has said that, "without something more," a gap of more than two months between the date the employer knew of the employee's planned use of FMLA leave and the adverse action "is too long" to show a causal connection between the two. *Id.* at 901.

Here, accepting the Amended Complaint alleges that Ms. Villaume engaged in protected activity by taking FMLA leave and that she suffered an adverse action when

her iTrade employment subsequently ended, she has not plausibly alleged a causal connection between the two.[8]  The Amended Complaint includes no allegations of direct evidence that might connect Ms. Villaume's FMLA leave to iTrade's decision to end her employment.  *See id.*  Again, the Amended Complaint's allegations regarding the hired individuals' qualifications do not plausibly show FMLA discrimination for the same reasons (discussed above) they do not plausibly show disability discrimination or reprisal. And, inferring iTrade learned of Ms. Villaume's plan to take FMLA leave when her leave began on February 27, 2023, there is a gap of more than three months between that date and the end of her iTrade employment.  That gap is too long to plausibly show causation. *Sisk*, 669 F.3d at 901.  Ms. Villaume has not sufficiently alleged that her exercise of FMLA rights "played a part" in iTrade's decision to end her employment.

*

A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. Cnty. of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013); *see Reinholdson v. Minnesota*, No. 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *see Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019).  On the other hand, when claims "might

---

[8]    iTrade's post-sales-meeting investigation, the ensuing warning, and the performance-improvement plan all pre-dated Ms. Villaume's FMLA leave.  *See* Am. Compl. ¶¶ 10–14.  Ms. Villaume has not alleged iTrade knew of her plan to take FMLA leave before these actions occurred.  Therefore, these actions could not plausibly have been taken in retaliation for Ms. Villaume's FMLA leave.

conceivably be repleaded with success," dismissal without prejudice is ordinarily justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Here, though the dismissal-prompting deficiencies might conceivably be supplemented with additional allegations, Ms. Villaume has amended once already, and she did not request either permission to amend a second time or a without-prejudice dismissal in response to iTrade's motion. Therefore, the dismissal will be with prejudice.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.    Defendant iTradeNetwork, Inc.'s Motion to Dismiss [ECF No. 7] is **GRANTED**.

2.    The Amended Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 6, 2025                         s/ Eric C. Tostrud
                                               Eric C. Tostrud
                                               United States District Court